## McINTOSH v. HOLTGRAVE et al.

No. 9810—Opinion Filed July 13, 1920.

(Syllabus by the Court.)

1. **Judgment—Fraudulent Procurement—Vacation—Equity Powers of District Court.**

The district courts of this state, in exercising their equitable jurisdiction, have power to vacate and annul orders or judgments of other courts in a proceeding brought for that purpose, for fraud in inducing or entering into such order or judgment, where such fraud is extraneous to the issues in the proceeding attacked, and especially where the court has been imposed upon by such fraud.

2. **Same—False Return of Service—Conclusiveness.**

When an officer makes a false return of personal service on which judgment is rendered, when in fact there has been no service at all, such return is not conclusive in a direct attack against said judgment, nor in a proceeding in equity to set aside said judgment for fraud, practiced by the opposing party, in procuring said service or return.

3. **Same—False Recital of Appearance—Conclusiveness.**

In a domestic judgment, when the judgment recites that the defendant appeared personally in court, such finding is conclusive in a collateral attack on said judgment, but is not conclusive in a direct attack on said judgment, nor in an equitable proceeding to set aside said judgment for fraud, when in fact the party did not appear, and said recital in said judgment was procured by the fraud of the successful party, said fraud being extrinsic to the issues.

4. **Judgment—Domestic Judgment—Methods of Attack.**

A domestic judgment may be attacked in three ways:

(a) By a direct attack, which is an attempt to avoid or correct it in some manner provided by law.

(b) A collateral attack, which is an attempt to avoid, defeat, or evade it, or deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it.

(c) By an equitable proceeding to set aside said judgment for fraud practiced by the successful party, said fraud inducing or entering into such order or judgment, where such fraud is extrinsic to the issues in the proceeding attacked, and especially where the court has been imposed upon by such fraud.

5. **Vendor and Purchaser—Bona Fide Purchasers—Burden of Proof—Fraud in Transfer to Grantor.**

Purchasers of land which has been fraudulently transferred to their grantor must establish the good faith of their purchase, and it cannot be presumed.

Error from District Court, Creek County; Ernest B. Hughes, Judge.

Action by Ananias McIntosh, alias Ananias Drew, a minor, by his guardian, W. S. Wright, against W. H. Holtgrave, Kay S. Alwood, C. C. Taylor, Ben Cash, and Harry H. Barker to set aside guardianship proceedings and guardian's deed and to recover land. From judgment against plaintiff on demurrer to petition, he brings error. Reversed and remanded.

H. B. Martin, R. A. Reynolds, and H. A. Guess, for plaintiff in error.

John G. Ellinghausen and Edwin A. Ellinghausen, for defendants in error.

McNEILL, J. This action was commenced in the district court of Creek county by the plaintiff in error, through his guardian, W. S. Wright, to set aside a certain guardianship proceeding and guardian deed, and for judgment decreeing the plaintiff in error to be the owner of certain real estate. The petition alleged that the plaintiff was a Creek freedman and received certain lands as his allotments. The material allegations of the petition. are that on September 1, 1908, plaintiff was a minor under the exclusive care of his mother, Stella McIntosh, alias Stella Drew, living at Shawnee, Okla., and his father, Pompey McIntosh, alias Drew, was residing at Wagoner. That said Pompey McIntosh presented a petition to the county court of Wagoner county asking to be appointed guardian of the estate of said minor, and the county court refused to appoint the petitioner, but did appoint James H. Kennedy, who thereafter sold the lands of this minor through the probate court. A copy of all the guardianship proceedings was attached to the petition. It is alleged that the guardianship proceedings disclosed that Stella McIntosh had been served with a notice of the

application for the appointment of guardian, and that the order of the court recites that she appeared personally in court and consented to the appointment of James H. Kennedy as guardian.

It then alleges that Stella McIntosh, alias Stella Drew, the mother of the minor, was not present in Wagoner county at the time of the hearing, but resided in Shawnee, Oklahoma, and had no knowledge of the proceedings, and that the proceedings were fraudulent, and were a fraud upon the rights of the minor, in that the person who represented in court that she was Stella McIntosh, alias Drew, was not in fact Stella McIntosh, but was some person unknown to plaintiff who presented herself to the court and made said representations for the purpose of deceiving the court and defrauding said minor out of his property. It is alleged, by reason of the fraudulent representations made by said Pompey McIntosh, alias Drew, and the person who represented herself as Stella McIntosh, alias Drew, the court was induced to appoint James Kennedy as guardian. The petition then asks to have the proceedings declared void, for .the reason the court acquired no jurisdiction, and the appointment of the guardian set aside, and the guardian's deed, all of which were obtained by fraud.

To this petition, the defendants filed a general demurrer, which was sustained by the court, and plaintiff having elected to stand on his petition, the court dismissed the petition at plaintiff's cost. From said judgment the plaintiff has appealed.

The question presented is, Did the petition state facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendants? Or the question may be stated, Can a minor in an equity proceeding set aside guardianship proceedings and the sale of his land had thereunder where the proceedings appear regular on their face, and the minor attacks the orders and judgment for want of jurisdiction of the court by reason of fraud practiced upon the court by the prevailing party, where such fraud is based upon facts extrinsic to the issues, and especially where the court has been imposed upon by such fraud and the minor has been deprived of his property by reason thereof? The statute which regulates the appointment of guardians (section 6522, Rev. Laws 1910) provides as follows:

"Before making the appointment the judge must cause such notice as he deems reasonable to be given to the relatives of the minor residing in the county, and to any person having care of said minor."

The petition in the instant case alleged that at the time of filing the petition for ap-

pointment of guardian the minor was two years of age and was under the exclusive care and custody of his mother. Under the statute and the allegations of the petition it was essential that the mother have notice for the court to acquire jurisdiction. For the purpose of the demurrer, the allegations of the petition must be considered as true. The question then presented is, Does the district court have power and jurisdiction in an equity proceeding to set aside and annul the orders and judgment of the county court on account of fraud in inducing or entering into such order or judgment, where the fraud practiced was extrinsic to the issues, and where the court has been imposed upon by such fraud? Such is the holding of this court in the cases of Brown v. Trent, 36 Okla. 239, 128 Pac. 895; Elrod v. Adair, 54 Okla. 207, 153 Pac. 660; Bridges v. Rea, 64 Oklahoma, 166 Pac. 416; Brewer v. Dodson, 60 Okla. 81, 159 Pac. 329; Griffin v. Culp, 68 Oklahoma, 174 Pac. 945; and Baldridge v. Smith, 76 Okla. 36, 184 Pac. 153.

There can be no question but that the petition states a cause of action, unless it can be said to be fatally defective by reason of the allegations in the petition that the records disclosed that the mother of the minor was personally served, and the further allegation that the court found the defendant was present in court and had consented to the appointment of the guardian. Are these recitals in the judgment conclusive, and is the judgment conclusive and not subject to an attack in an equitable proceeding upon the ground that said recitals were false and untrue and the court was imposed upon by the fraud of the successful party, said fraud being extrinsic to the issues, and preventing the adverse party from appearing, or from having notice of the pending of said proceedings?

This court, in the case of Ray v. Harrison, 32 Okla. 17, 121 Pac. 633, stated as follows:

"When an officer makes a false return of personal service on which judgment is rendered, when in fact there has been no service at all, such return is not conclusive evidence against the fact."

This same principle has been followed in the case of Caulk v. Lowe, 74 Oklahoma, 178 Pac. 101; and in Griffin v. Culp, 68 Oklahoma, 174 Pac. 495, where Mr. Justice Rainey, speaking for the court, stated as follows:

"When want of jurisdiction appears on the face of the proceedings of a court of general jurisdiction, whether expressly or by necessary implication, and whether as to the subject-matter or as to the parties, the judgment is void, and will be so treated even in a collateral attack; but in the case of a domestic judgment of a court of general juris-

diction want of jurisdiction cannot ordinarily be shown by extrinsic evidence, in a collateral attack, but may be shown on a direct attack; but where parties by sufficient pleadings assail a judgment for want of jurisdiction because of fraud, extrinsic to the record, practiced by the prevailing party on the court or on the party against whom the judgment was rendered, parol evidence is admissible in support of such pleadings, and it is immaterial whether such an attack be denominated 'direct' or 'collateral.'"

Decisions of this court which may be considered holding to the contrary are the case of Continental Gin Co. v. De Bord, 34 Okla. 66, 123 Pac. 159, wherein the court stated:

"When, in a judicial proceeding, the court expressly finds that the defendant is present, such finding is not subject to attack in a collateral proceeding"

—and the cases following that rule, to wit: Rice v. Woolery, 38 Okla. 199, 132 Pac. 817; Blackwell v. McCall, 54 Okla. 96, 153 Pac. 815; Daugherty v. Feland, 59 Okla. 124, 157 Pac. 1144. The rule announced in both lines of cases is correct. The rule announced in the case of Ray v. Harrison is correct where the judgment is attacked by direct attack, or by a proceeding in equity to set aside the judgment upon grounds of fraud extrinsic to the issues. The rule announced in the case of Continental Gin Co. v. De Bord is a correct statement of the law in so far as it pertains to a collateral attack, but is not a correct statement of the law when applying to direct attacks, or to a proceeding in equity based upon fraud extrinsic to the issue. This court expressed its opinion upon this same question in the case of Griffin v. Culp, when the court, speaking through Mr. Justice Rainey, stated as follows:

"The distinction in the two divergent theories is in name only. In any case, if the matters alleged in the pleadings are permissible under the provisions of the Code hereinafter mentioned and a party to the action assails, by such pleadings, a judgment for want of jurisdiction because of fraud extraneous to the issues practiced upon the court or on the party against whom the judgment was rendered that prevented him from having a fair opportunity to present his case, the same evidence is admissible in support of such pleadings whether the attack is denominated direct or collateral."

In my opinion Mr. Justice Rainey blazed the way to clarify the opinions, not only of this court, but of the courts of the different states. The courts, in announcing the kinds of attack that may be made upon a domestic judgment, always classify them as either direct attacks or collateral attacks, and define direct attack as follows:

"A 'direct attack' on a judicial proceeding is an attempt to avoid or correct it in some manner provided by law"

—and collateral attack as follows:

"A 'collateral attack' on a judicial proceeding is an attempt to avoid, defeat, or evade it, or ·deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it."

The confusion in the opinions has arisen by the courts attempting to determine whether an equity proceeding is a direct attack or a collateral attack, and upon this they disagree, and this is the basis for the confusion in the opinions in many cases, and upon which the courts disagree. One court, under a state of facts, will hold that an equity proceeding for fraud extrinsic to the issues is a direct attack, and set aside the judgment; another court will hold it is a collateral attack, under the same pleading and evidence, and hold the recitals in the judgment conclusive. In my judgment it is, strictly speaking, neither, but it is more in the nature of a direct attack. In my judgment, if the court would classify the different proceedings by which a judgment might be attacked under three classifications, to wit: First, direct attack; second, collateral attack; and third, proceeding in equity because of fraud extrinsic to the issues which prevented the complaining party from having a fair hearing—this would avoid much of the confusion. If such a classification were made, the opinions hereafter would not be so conflicting, nor so confusing, either to the members of the bar or the trial court in attempting to apply the correct rule. There is no case which does not come within one of these classes. Commissioner Rosser, in the case of Brown v. Trent, stated:

"But an attack upon a judgment for fraud in its procurement is a direct attack, over which courts of equity take jurisdiction, and no well considered case can be found in which such jurisdiction is denied."

An examination of the cases which announce the rule that was followed in the case of Continental Gin Co. v. De Bord and the cases of this court following that case, discloses that the cases were considered on no other theory than, Was the proceeding attacking the service or jurisdiction of the court a collateral attack? The cases were not considered by the court upon the theory that any of the attacks were an equitable proceeding to set aside a judgment on the ground of fraud extrinsic to the issues, although a reading of the cases will disclose that in some of the cases they were in fact such proceedings, but in deciding the cases the courts did not consider them upon that theory, but only upon the theory that the proceeding was a collateral attack. As to whether the judgment, which is regular on its face, and discloses that the court had jurisdiction of the parties, may be attacked in an equity proceeding to show the jurisdiction was not obtained, but the jurisdiction was based upon fraudulent pleadings, is discussed in a well-considered opinion by the Supreme Judicial Court of Massachusetts in the case of Edson v. Edson, 108 Mass. 590, the syllabus of which reads:

"This court has power, upon petition of the party aggrieved, to vacate a decree of divorce obtained at a former term against the petitioner by false testimony, on a libel of which she had no actual notice, knowledge of which was fraudulently kept from her by the other party, and of which the court had only an apparent jurisdiction, founded on his false allegations of domicile."

The court, in the opinion, after setting forth that the case was in the nature of an equitable proceeding, stated as follows:

These set forth a case in which it is clear that a party has procured a judgment of this court in his favor by the perpetration of a gross fraud, by means of which he induced this court to take cognizance of a case at a term of the court in a county in which it could not legally exercise jurisdiction over the parties, and to hear and determine it without giving to the adverse party any due or legal notice of the proceedings, or any opportunity to appear and be heard in the suit. The question to be determined is, whether a judgment so obtained can be reexamined and set aside by the party aggrieved by the fraud, or whether it is to be taken as forever binding and conclusive on the rights and obligations of the parties.

"The statement of the question is of itself sufficient to make it apparent that if there is no remedy by which judgments so procured to be rendered can be impeached and annulled, courts of justice may be made instruments by which the grossest frauds may be successfully accomplished, to the great wrong and injury of innocent persons. Such a conclusion cannot be supported, unless it is founded on adjudicated cases which this court is bound to regard as obligatory declarations of the law, or upon reasons of the most decisive and satisfactory nature.

"Upon careful examination of the authorities, we are entirely satisfied that they do not sustain the doctrine that courts have no power to grant relief to parties to a suit, against whom a judgment has been obtained by fraud. It is no doubt true, that a decree or judgment which stands unreversed and in force cannot be called in question or impeached in collateral proceedings, by one of the parties to the original suit; it is a very different proposition to maintain that an

innocent party cannot invoke the power of the court by which the original judgment or decree was rendered, to vacate and annul it on the ground that it was procured by a fraud practiced on the court to his gross injury. We believe it to be an established principle of jurisprudence, that courts of justice have power, on due proceedings had, to set aside or vacate their judgments and decrees, whenever it appears that an innocent party without notice has been aggrieved by a judgment or decree obtained against him without his knowledge, by the fraud of the other party."

In the case of Hilton v. Guyott, 42 Fed. 249, the court stated as follows:

"The term is indefinite, and when it is said that a judgment is vitiated and may be nullified by fraud it is not to be understood that a fraud which consists in false testimony or a suppression of truth in respect to the matters litigated on the trial of the action which resulted in the judgment is sufficient to have this effect. Fraud such as will vitiate a judgment consists in preventing the complaining party from presenting the merits of his case, or imposing on the jurisdiction of the court or corrupting the court or collusion between counsel."

The Supreme Court of Indiana, in the case of Caswell v. Caswell, 11 N. E. 342, stated as follows:

"'Fraud' is of two kinds with reference to judicial proceedings: Fraud in obtaining a decree by false evidence, and fraud which gives the court colorable jurisdiction over the defendant's person."

We are not interested in the fraud that comes within the first class, although it is universally held that such fraud cannot be the basis of an equity proceeding to set aside a judgment. The fraud that comes within the second class of cases includes the case where equity has intervened and set aside the judgment because it was obtained by such fraud. The Supreme Court of the United States, in the case of United States v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93, enumerated the characters of fraud that a court of equity would recognize, and they stated as follows:

First. Fraud which prevents the unsuccessful party from fully exhibiting his case.

Second. Fraud practiced upon the unsuccessful party by his opponent:

(a) By keeping him away from court.

(b) A false promise of compromise.

Third. Where the defendant never had knowledge of the suit.. being kept in ignorance of the case by fraudulent acts of the plaintiff.

Fourth. Where an attorney fraudulently or without authority assumes to represent a party and connives with the successful party.

Fifth. Where an attorney regularly employed corruptly sells out his client's interest.

The opinion then says, these and similar cases, which disclose there has never been a real contest on account of fraud of the successful party in the trial or hearing of the case, are grounds upon which a court of equity will, in an independent suit, set aside or annul the former judgment or decree. This classification in the case of United States v Throckmorton was approved by Mr. Justice Rainey in the case of Griffin v. Culp and by Commissioner Rosser in the case of Brown v. Trent.

Now, do the facts pleaded in the case at bar bring the case within the rule above announced? The fraud pleaded had the following result:

First. It prevented the minor from having his case presented in the court, by reason of the fraud practiced upon the court and the minor by having a fraudulent return made of the notice.

Second. The practice of fraud upon the court by having a third party fraudulently represent herself to be the mother of the minor and appear in court and fraudulently attempt to give consent.

Third. The participation of the father in the fraud prevented the mother of the infant from having notice of the suit.

Fourth. There was never any real contest or trial or hearing of the case, for the reason that the fraud was such that the hearing amounted to a farce and a mockery.

These acts of fraud as pleaded bring the case squarely within the rule advanced in the case of United States v. Throckmorton, supra.

The defendants in error contend, however, the petition, does not state a cause of action, for the reason that the parties are innocent purchasers; but that claim is not available at this time, nor can it be considered by the court at this time. If the defendants are innocent purchasers, it will be necessary for the defendants to plead and prove such fact. Such was the holding of this court in the case of Adams Oil & Gas Co. v. Hudson, 55 Okla. 386, 155 Pac. 220, and in Tucker v. Leonard, 76 Okla. 16, 183 Pac. 907. As to the rights of innocent purchasers, it is unnecessary for us to determine their rights, or whether they have any, until that question is presented.

For the reasons stated, the judgment of the court is reversed and remanded, with instructions to overrule the demurrer.

RAINEY, C. J., and HARRISON, KANE, and JOHNSON, JJ., concur.

PITCHFORD, J., dissents, for the reason the petition fails to allege that the purchaser at the guardian's sale purchased with notice of said fraud.